<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

MICKEY LEE VANDERPOOL,       :
                              :   Civil Action No. 10-2030 (WJM)
            Plaintiff,     :
                              :
                              :
            v.              :   **OPINION**
                              :
CHRIS CHRISTIE, et al.,        :
                              :
            Defendants.   :

**APPEARANCES:**

    MICKEY LEE VANDERPOOL, Plaintiff <u>pro</u> <u>se</u>
    Special Treatment Unit
    Northern Regional Unit
    30-35 Hackensack Avenue, P.O. Box 699
    Kearny, New Jersey 07032

**MARTINI**, District Judge

    Plaintiff, Mickey Lee Vanderpool, an involuntarily committed person pursuant to the Sexually Violent Predator Act ("SVPA"), <u>N.J.S.A.</u> 30:4-27.24, <u>et</u> <u>seq.</u>, seeks to bring this action <u>in forma pauperis</u>. Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed <u>in forma pauperis</u> ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

    At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary

relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should be dismissed without prejudice at this time.

## I.   BACKGROUND

Plaintiff, Mickey Lee Vanderpool ("Vanderpool"), brings this civil rights action, pursuant to 42 U.S.C. § 1983, against the following defendants: Chris Christie, the Governor of New Jersey; Paula Dow, Attorney General for the State of New Jersey; Gary Lanigan, Commissioner of the New Jersey Department of Corrections ("NJDOC"); Jennifer Velez, Commissioner of the New Jersey Department of Human Services ("NJDHS"); Steven Johnson, NJDOC Administrator; Merril Main, NJDHS Administrator; and Mr. C. Conway, NJDOC Administrator.  (Complaint, Caption and ¶¶ 4b-4h). The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

Vanderpool alleges that, on March 17, 2010, a community meeting was held at the Northern Regional Unit ("NRU") in Kearny, New Jersey to discuss a proposed transfer of the NRU residents to the East Jersey State Prison ("EJSP") in Rahway, New Jersey.[1]

---

[1]   The transfer of the NRU residents at the Kearny facility has been the subject of newspaper articles and a recent application for injunctive relief in a pending civil case in this District Court, <u>Alves, et al. v. Ferguson, et al.</u>, Civil Action No. 01-cv-0789 (DMC)(MF)(Consolidated).  This Court refers to the

The meeting was conducted by defendant Steven Johnson.  Johnson told the residents that they would be housed in the administrative segregation unit at the EJSP.  He also told the residents that they would have to take their mattresses with them.  (Compl., ¶ 6 Statement of Claims).

Also, on March 17, 2010, the SVP residents brought to the attention of Bryan Freeman, Assistant Administrator of NJDHS, that their constitutional rights were being violated by placing the residents on prison property when they are not prisoners. (Id.).

_____

Opinion issued by the Honorable Dennis M. Cavanaugh, U.S.D.J., in the Alves case, on March 29, 2010, in which Judge Cavanaugh denied injunctive relief.  (See Docket entry no. 115).  In Alves, the residents moved to have the Court order that (a) the resident population at the Annex (another NJDOC facility in New Jersey) not be increased without leave of Court; and (b) the State of New Jersey must provide residents' counsel with at least 30 days notice of any proposed transfer to allow the residents an opportunity to seek Court intervention, if necessary. Specifically, for purposes of factual background in this action, Judge Cavanaugh noted that, "[p]ursuant to County of Hudson v. State of New Jersey, the State of New Jersey is required to turn over the premises of the [Kearny] facility to the County of Hudson by May 19, 2010.  See 2009 N.J. Super Unpub. LEXIS 1188, at *19 (N.J. Super. A.D.).  Accordingly, the State must locate another temporary or permanent facility to house the SVPs currently living there."  (March 29, 2010 Opinion, Docket entry No. 115, at pg. 2).  Judge Cavanaugh further noted that a February 3, 2010 newspaper article had reported that the residents of the Kearny facility were to be relocated to the Special Treatment Unit "Annex" in Avenel, New Jersey, located on or near the grounds of the East Jersey State Prison.  However, by the time the briefing on the residents' motion was completed, it had been confirmed that another location had been selected, namely, the administrative segregation unit in East Jersey State Prison itself.  (March 29, 2010 Opinion, Docket entry No. 115, at pg. 4).

On March 25, 2010, a memorandum was issued informing the residents that they can not order personal belongings, such as food and clothing, or pay bills because of the pending transfer to EJSP.  There also was a deadline of April 9, 2010, for receiving general packages, and a deadline of April 25, 2010 for receiving food packages at the Kearny facility.  (Id.).

On April 14, 2010, Dr. Merril Main informed residents that treatment at EJSP would be on "stand-still" for a month or more until the NJDHS and NJDOC administrators could determine how to run therapy and yard recreation at EJSP.  Main told plaintiff that the residents would be "idle for awhile" while the EJSP lock-up unit was fixed to accommodate housing for civilly committed residents.  (Id.).

Also on April 14, 2010, NJDOC Administrators Steven Johnson and C. Conway informed the residents at Kearny that the move to EJSP wold occur between May 10th and May 15th, 2010.  The next day, Sgt. Smith told residents that they would have to get rid of some of their personal belongings to facilitate the move to EJSP. The administrators also told the residents their personal property would be subject to search by trained dogs for contraband because they were moving to a prison facility and that is a policy guideline for NJDOC facilities.  (Id.).

Vanderpool asks that he be provided with "the proper treatment of a federally funded facility."  He also seeks an

unspecified amount in compensatory damages for the mental anguish and stress that he is suffering in being transferred to a prison facility.  (Compl., ¶ 7).

II.   <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

A district court is required to review a complaint in a civil action where the litigant is proceeding <u>in forma pauperis</u>. Specifically, the court is required to identify cognizable claims and to <u>sua sponte</u> dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B).  Accordingly, because Vanderpool is proceeding <u>in forma pauperis</u> in this matter, this action is subject to <u>sua sponte</u> screening for dismissal under 28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a <u>pro se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>See Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007)(following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) and <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972)).  <u>See also United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  The Court

5

need not, however, credit a <u>pro</u> <u>se</u> plaintiff's "bald assertions" or "legal conclusions." <u>Id.</u>

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A <u>pro</u> <u>se</u> complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Haines</u>, 404 U.S. at 521 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). <u>See also</u> <u>Erickson</u>, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009). The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights. <u>Id</u>. The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides

6

that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).[2]  Citing its recent opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" <u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."  <u>Fed. Rule Civ. Proc.</u> 8(a)(2).

<u>Iqbal</u>, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a

---

[2]  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." Fed.R.Civ.P. 8(d).

> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[3] that applied to federal complaints before Twombly.  Fowler, 578 F.3d at 210.  The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

---

[3]  In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

8

> First, the factual and legal elements of a claim should be
> separated.  The District Court must accept all of the
> complaint's well-pleaded facts as true, but may disregard
> any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].
> Second, a District Court must then determine whether the
> facts alleged in the complaint are sufficient to show that
> the plaintiff has a "plausible claim for relief." [Id.]  In
> other words, a complaint must do more than allege the
> plaintiff's entitlement to relief.  A complaint has to
> "show" such an entitlement with its facts.  See Phillips,
> 515 F.3d at 234-35.  As the Supreme Court instructed in
> Iqbal, "[w]here the well-pleaded facts do not permit the
> court to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not 'show [n]'-'that
> the pleader is entitled to relief.'"  Iqbal, [129 S.Ct. at
> 1949-50].  This "plausibility" determination will be "a
> context-specific task that requires the reviewing court to
> draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this

pro se pleading must be construed liberally in favor of

Plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89

(2007).  Moreover, a court should not dismiss a complaint with

prejudice for failure to state a claim without granting leave to

amend, unless it finds bad faith, undue delay, prejudice or

futility.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-

111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir.

2000).

### III.  SECTION 1983 ACTIONS

Vanderpool brings this action pursuant to 42 U.S.C. § 1983.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within

> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

### IV.   THE NEW JERSEY SEXUALLY VIOLENT PREDATOR ACT

The New Jersey SVPA, N.J.S.A. 30:4-27.24 *et seq*., provides for the custody, care and treatment of involuntarily committed persons who are deemed to be sexually violent predators ("SVP"). N.J.S.A. 30:4-27.26.  The New Jersey Department of Corrections ("DOC") operates the facilities designated for SVPs, N.J.S.A. 30:4-27.34(a); and the New Jersey Department of Human Services ("DHS") provides for their treatment.  N.J.S.A. 30:4-27.34(b). The SVPA was amended in 2003 to require that regulations be promulgated jointly by the DOC and the DHS, in consultation with of the Attorney General, taking "into consideration the rights of the patients as set forth in section ten of P.L. 1965, c. 59 (C. 30:4-24.2) ... [to] specifically address the differing needs and specific characteristics of, and treatment protocols related to, sexually violent predators."  N.J.S.A. 30:4-27.34(d).

10

In passing the SVPA, the New Jersey Legislature made specific findings regarding SVPs.  N.J.S.A. 30:4-27.25.  The Legislature noted that it was necessary to modify the previous civil commitment framework and additionally separate SVPs from other persons who have been civilly committed.  Id.  The SVPA defines a SVP as:

> ... a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

N.J.S.A. 30:4-27.26(b).

Those persons committed under the SVPA shall receive annual review hearings.  N.J.S.A. 30:4-27.35.  A SVP may be released from involuntary civil commitment upon recommendation of the DHS or by the SVP's own petition for discharge.  N.J.S.A. 30:4-27.36.

## V.  ANALYSIS

### A.  Transfer to Prison Facility Claim

The principal claim asserted in Vanderpool's Complaint is that his transfer to a prison facility, as a civilly committed person under the SVPA, is unconstitutional.  Vanderpool seeks to prevent his transfer accordingly.

In Kansas v. Hendricks, 521 U.S. 346 (1997), the Supreme Court of the United States examined the conditions of confinement provided by Kansas' Sexually Violent Predator Act.  The Act

11

called for the confinement of sexually violent predators in a secure facility because they were dangerous to the community. Id., 521 U.S. at 363-64.  Pertinent here, the Supreme Court was aware that the sexually violent predators in Kansas were to be held in a segregated unit within the prison system.  However, the Court noted that the conditions within the unit were essentially the same as conditions for other involuntarily committed persons in mental hospitals.  Moreover, confinement under the Act was not necessarily indefinite in duration, and the Act provided for treatment.  Id., 521 U.S. at 363, 364, 365-368.  Thus, the Supreme Court held that involuntary confinement under Kansas' SVPA was not unconstitutional so long as such civilly-confined persons are segregated from the general prison population and afforded the same status as others who have been civilly committed.  Id., 521 U.S. at 368-69.  See also Seling v. Young, 531 U.S. 250, 261062 (2001)(holding same with respect to the State of Washington's SVPA).

Here, the New Jersey SVPA is essentially the same as the Kansas and Washington SVP statutes that were examined and upheld as constitutional by the Supreme Court in Hendricks and Seling, respectively.[4]  See Bagarozy v. Goodwin, Civil Action No. 08-468

_____

[4]  Recently, the Supreme Court held constitutional under the Necessary and Proper Clause, a federal statute that allowed a district court to order the civil commitment of a sexually dangerous federal prisoner beyond the date the prisoner would otherwise be released.  United States v. Comstock, No. 08-1224, __ U.S. __, 130 S.Ct. 1949 (May 17, 2010).  Although these civilly committed persons remained confined at a federal prison,

12

(SRC), 2008 WL 4416455, *7-8 (D.N.J. Sept. 23, 2008); In re
Commitment of W.Z., 173 N.J. 109, 801 A.2d 205, 211 (2002).
Therefore, this Court finds that Vanderpool's transfer, with the
SVP residents of the Kearny facility, to a segregated unit in the
East Jersey State Prison does not, in and of itself, violate the
U.S. Constitution's Due Process Clause.  Moreover, because the
transfer has now been effected, plaintiff's claim for injunctive
relief to prevent the transfer to EJSP is now rendered moot.
Accordingly, the claim that plaintiff's transfer to a segregated
unit within a prison facility is unconstitutional will be
dismissed for failure to state a cognizable claim of a
constitutional deprivation.

B.   Conditions of Confinement Claim

     Although plaintiff's transfer to a segregated unit within a
prison facility is not, in and of itself, a constitutional
violation, Vanderpool makes additional allegations concerning the
conditions of confinement at the EJSP facility.  For instance, he
complains that he will be housed in a 23-hour lock-down facility.
However, Vanderpool also states that Mr. Main had told the
residents that there would be a period of time needed to resolve
issues of recreation and yard time, and to renovate the space to
make suitable living quarters for the civilly committed
residents.  See Youngberg v. Romeo, 457 U.S. 307, 321-22
(1982)("Persons who have been involuntarily committed are

---

namely, FCI Butner, the Court did not address their place of
civil confinement as being unconstitutional.

entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.").

Generally, the Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment, Bell v. Wolfish, 441 U.S. 520, 536 (1979),[5] within the bounds of professional discretion, Youngberg, 457 U.S. at 321-22. Specifically, in Youngberg, the Supreme Court held that civilly committed persons do have constitutionally protected interests, but that these rights must be balanced against the reasons put forth by the State for restricting their liberties. Id. at 307. The Constitution is not concerned with de minimis restrictions on patients' liberties. Id. at 320. Moreover, "due process requires that the conditions and duration of confinement [for civilly confined persons] bear some reasonable relation to the purpose for which persons are committed." Seling, 531 U.S. at 265. While the nature of an SVP's confinement may factor in this balance of what is reasonable, it is clearly established that the substantive due process protections of the Fourteenth Amendment apply to SVPs. See Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001)(applying the Fourteenth Amendment's "objective

_____

[5] In Bell v. Wolfish, the Supreme Court held that whether a condition of confinement of pretrial detainees violated their constitutional rights turns on whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose. 441 U.S. 520, 535-39, (1979).

reasonableness" standard to excessive force claims brought by civilly committed SVPs).

Vanderpool's main allegation with respect to the conditions of his confinement relates to his contention that he is now housed in a 23-hour lock down facility.  This restriction also involves limited recreation yard time.  However, Vanderpool acknowledges in his Complaint that these conditions are merely temporary until the "Ad Seg Unit" is renovated for the SVP residents.  At most, the administrators told plaintiff and the other SVP residents that it would take a month or two to complete renovations to accommodate the less restrictive and treatment-oriented environment suitable for civilly committed SVPs.

Moreover, even if plaintiff has temporary restrictions in yard activity and mobility throughout the facility, the Third Circuit has held that placement of a civilly committed SVP in segregated confinement does not violate due process unless the deprivation of liberty is in some way extreme.  See Deavers v. Santiago, 243 Fed. Appx. 719, 721 (3d Cir. 2007)(applying Sandin v. Conner, 515 U.S. 472 (1995),[6] to segregated confinement of civilly committed SVPs).  See also Thielman v. Leean, 282 F.3d 478 (7th Cir. 2002)(likewise extending Sandin to civil commitment settings).  As stated above, Vanderpool's complaints about the

---

[6]  In Sandin, the Supreme Court held that there was no cognizable liberty interest in freedom from additional restraint in a prison setting.  See 515 U.S. at 486 ("We hold that [the prisoner's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest.").

restrictions on his confinement are minimal and clearly temporary.  Consequently, this Court finds that Vanderpool has failed to state a cognizable claim in this regard at this time, and the alleged conditions of confinement claim will be dismissed without prejudice.  To the extent that Vanderpool can allege facts to show that unconstitutional conditions of confinement have continued for a longer period of time than suggested by the NJDHS and NJDOC administrators, Vanderpool may seek leave to re-open this case and file an amended pleading.[7]

C.   Interference with the Mail Claim

Vanderpool next appears to assert that the delivery of his mail to the Annex, rather than directly to him at EJSP, violates his First Amendment rights.

Inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments.  Jones v. Brown, 461 F.3d 353, 358 (3d Cir. 2006), cert. denied, 549 U.S. 1286 (2007).[8]

---

[7]  Should plaintiff so choose to amend his Complaint to cure the deficiencies noted herein, pursuant to Federal Rule of Civil Procedure 15, Vanderpool should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.

[8]  In Jones v. Brown, the United States Court of Appeals for the Third Circuit held that the legal mail policy of state prison in opening legal mail outside the presence of the inmate violated

16

However, an inmate's constitutional right to send and receive mail may be restricted for legitimate penological interests.  See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987).  In Turner, the Supreme Court of the United States found that a prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest.  Id. at 89.  The Court established a balancing test pursuant to which courts analyze prohibitions on prisoners' exercise of their constitutional rights by considering the following four factors: (1) whether prohibiting an inmate from exercising a constitutional right is rationally related to a legitimate governmental interest; (2) whether there are alternative means of exercising that right; (3) what effect accommodation of the interest would have on guards, other inmates, and the allocation of prison resources; and (4) whether there are ready alternatives

---

the inmate's First Amendment right to freedom of speech, and was not reasonably related to prison's legitimate penological interest in protecting health and safety of prisoners and staff. 461 F.3d at 358.  The Third Circuit also has held that "a pattern and practice of opening properly marked incoming court mail outside an inmate's presence infringes communication protected by the right to free speech.  Such a practice chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court." Bierequ v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995) (applying the Turner analysis), implied overruling on other grounds recognized in Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).  Thus, the assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen may state a First Amendment claim.  See, e.g., Antonelli v. Sheahan, 81 F.3d 1422, 1431-32 (7th Cir. 1996); Castillo v. Cook County Mail Room Dep't, 990 F.2d 304 (7th Cir. 1993).

17

available that continue to serve the prison's interest without impinging constitutional rights.  Turner, 482 U.S. at 89-91.  The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security.  Id.

The United States Court of Appeals for the Third Circuit has applied Turner in analyzing constitutional claims by civilly committed SVPs.  See Rivera v. Rogers, 224 Fed. Appx. 148, 2007 WL 934413 (3d Cir. March 29, 2007)(applying Turner in analyzing claims of SVPs that opening of their packages violated their First Amendment rights).  Other courts likewise have applied Turner when analyzing claims brought by civilly committed SVPs alleging First Amendment violations.[9]  See Willis v. Smith, 2005 WL 550528 (N.D. Iowa Feb. 28, 2005)(noting that status of SVPs was substantially similar to that of prisoners and applying Turner to SVP claims concerning mail handling procedures); Ivey v. Mooney, 2008 WL 4527792, at *4 n. 7 (D. Minn. Sept. 30, 2008)(applying Turner, but noting that a civil confinement is significantly different from a criminal confinement); Francis v. Watson, 2006 WL 2716452, at *3 (D.S.C. Sept. 22, 2006)(citing

---

[9]  Essentially, the First Amendment analysis under Turner mirrors the due process analysis under Youngberg; in both instances, courts must balance the constitutional interests of confined persons against the legitimate interests of the state-run institution in which they reside.  See Beaulieu v. Ludeman, 2008 WL 2498241, at *20 n. 15 (finding Turner to be consistent with Youngberg because "it will not allow a Program detainee's right to be restricted unless there is a valid institutional reason for doing so").

cases that have applied <u>Turner</u> in cases involving civilly confined persons); <u>Marsh v. Liberty Behavioral Health Care, Inc.</u>, 2008 WL 821623, at *5 (M.D. Fla. Mar. 27, 2008), <u>aff'd</u> 330 Fed. Appx. 179 (11th Cir. 2009); <u>Beaulieu v. Ludeman</u>, 2008 WL 2498241, at *20 (D. Minn. June 18, 2008).

In <u>Rivera</u>, the Third Circuit affirmed the district court's ruling that a facility housing civilly committed SVPs has a legitimate interest in both the safety of its facility and the rehabilitation of its patients. <u>Rivera</u>, 224 Fed. Appx. at 151 (citing <u>Waterman v. Farmer</u>, 183 F.3d 208, 215 (3d Cir. 1999)("[I]t is beyond dispute that New Jersey has a legitimate penological interest in rehabilitating its most dangerous and compulsive sex offenders.")). Specifically, the court upheld as constitutional the STU's policy that allows staff to open packages not marked as "legal mail" to assure that the packages do not contain contraband (<u>i.e.</u>, items either harmful to staff and residents, or detrimental to rehabilitation). The court found that plaintiff was free to send and receive mail so long as the content of his mail was not sexually explicit. Moreover, the Third Circuit found no error in the district court's conclusion that there were no ready alternatives to mail security and that the STU's policy appeared to be the only viable alternative, thus supporting the reasonableness of the mail policy. <u>Rivera</u>, 224 Fed. Appx. at 151.

Here, this Court likewise finds that it is beyond dispute that the staff at EJSP, where plaintiff and other SVP residents are newly housed, has a legitimate interest in both the safety of its facility and rehabilitating its patients. As noted above, these civilly committed persons are convicted sexual predators, which makes safety at EJSP a very important concern. The staff clearly must determine if any items coming through the mail pose a threat to the safety of the staff or the other residents. They also must decide if any of the materials passing through the mail could be detrimental to a resident's therapy. Consequently, as set forth by the Supreme Court and the Third Circuit, the Court must defer to the prison officials when it comes to issues of managing a safe and operational prison facility. In this case, delivery of letters and packages at the Avenel facility located close by, where the staff is trained with respect to SVP issues unlike the general NJDOC staff at EJSP, assures that harmful materials are not being passed through the mail, but also allows for specialized treatment regarding SVP residents. This new policy, which appears to be preliminarily instituted because of the recent transfer of the SVP residents to EJSP, clearly bears a rational relationship to both interests discussed above. Moreover, in his interference with the mail claim, Vanderpool does not allege a single incident where his mail has not been

delivered or received.[10]  Rather, his only complaint seems to be
that his mail is being sent to another facility instead of EJSP
where he now resides.  Vanderpool does not articulate a claim
that prison officials are intentionally delaying his mail.  He
clearly admits that he is free to use and receive mail and
packages in general.  Therefore, the Court will dismiss this
claim without prejudice at this time, and allow Vanderpool to
file an amended pleading, consistent with the pleading
requirements of Rule 8(a)(2) and amended pleading requirements of
Rule 15 of the Federal Rules of Civil Procedure, as discussed in
fn. 10 of this Opinion, <u>supra</u>, if Vanderpool in fact wishes to
pursue such a claim.

D.  <u>Deprivation of Property Claim</u>

Vanderpool also appears to be asserting a claim that he has
been deprived of his personal property in violation of his
constitutional rights.

The Fourteenth Amendment provides, in pertinent part here,
that the State may not "deprive any person of life, liberty, or
property, without due process of law[.]"  The "due process of
law" essentially requires that the government provide a person
notice and opportunity to be heard in connection with the
deprivation of life, liberty or property.  <u>Zappan v. Pennsylvania</u>

---

[10]  A single interference with the delivery of an inmate's
personal mail, without more, does not rise to the level of a
constitutional deprivation.  <u>Morgan v. Montayne</u>, 516 F.2d 1367
(2d Cir. 1975), <u>cert</u>. <u>denied</u>, 424 U.S. 973 (1976).

Board of Probation and Parole, 152 Fed. Appx. 211, 220 (3d Cir.
2005)("The essential requirements of any procedural due process
claim are notice and the opportunity to be heard."). Hence, to
establish a prima facie case of a procedural due process
violation, a plaintiff must establish: (1) a deprivation of a
constitutionally protected liberty or property interest, (2)
state action, and (3) constitutionally inadequate process. See
Rusnak v. Williams, 44 Fed. Appx. 555, 558 (3d Cir. 2002)
("Procedural due process claims, to be valid, must allege state
sponsored-deprivation of a protected interest in life, liberty or
property. If such an interest has been or will be deprived,
procedural due process requires that the governmental unit
provide the individual with notice and a reasonable opportunity
to be heard.")(citation omitted).

     To have a property interest, Vanderpool must demonstrate
"more than an abstract need or desire for it. ... He must,
instead, have a legitimate claim of entitlement to it" under
state or federal law. Board of Regents v. Roth, 408 U.S. 564,
577 (1972). For present purposes, a procedural due process
analysis involves a two step inquiry: the first question to be
asked is whether the complaining party has a protected liberty or
property interest within the contemplation of the Due Process
clause of which he has been deprived and, if so, the second
question is whether the process afforded the complaining party to

deprive him of that interest comported with constitutional requirements.  Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).

Here, Vanderpool fails to specify what property the NJDOC and NJDHS officials did not permit him to keep.  Moreover, the limitations allegedly placed by NJDOC and NJDHS officials on personal belongings to be moved with the transfer of the residents from the Kearny facility to EJSP were neither arbitrary or capricious, but plainly were implemented in order to address the logistics of the move and to further a legitimate goal of maintaining a safe and organized mass transfer of SVPs from one facility to another.  In this regard, Vanderpool simply has not demonstrated a constitutionally-recognized property interest in the continued possession of unrestricted personal property necessary to satisfy the threshold requirement of a deprivation of property interest.  See Semler v. Ludeman, 2010 WL 145275, *25 (D. Minn. Jan. 8, 2010).

Furthermore, to the extent that Vanderpool was deprived of personal property as a result of the transfer to EJSP, he has a post-deprivation remedy.  Property loss caused by the intentional acts of government officials does not give rise to a procedural due process claim under § 1983 where a post-deprivation remedy satisfying minimum procedural due process requirements is available under state law.  See Parratt v. Taylor, 451 U.S. 527 (1981) (overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); see also Zinermon v. Burch, 494

23

U.S. 113, 115 (1990); <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984);

<u>Holman</u>, 712 F.2d at 856.[11]  The New Jersey Tort Claims Act

("NJTCA"), N.J. STAT. ANN. § 59:1-1 <u>et seq.</u>, provides a post-

deprivation judicial remedy to persons who believe they were

deprived of property at the hands of the State or local

government.  <u>See</u>  <u>Holman</u>, 712 F.2d at 857; <u>Asquith v. Volunteers

of America</u>, 1 F. Supp.2d 405, 419 (D.N.J. 1998), <u>aff'd</u> 186 F.3d

407 (3d Cir. 1999).

     Therefore, any deprivation of property claim asserted by

Vanderpool here will be dismissed with prejudice for failure to

state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

E.  <u>Unlawful Search Claim</u>

     Vanderpool next alleges that his personal property will be

subject to a search for contraband by dogs upon their arrival at

EJSP.  This allegation is purely speculative.  Further, it would

appear that plaintiff is asserting that as a civilly committed

person, such searches are unconstitutional and violate his rights

under the Fourth Amendment.

---

     [11]  In <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422 (1982),
the Supreme Court explained, however, that post-deprivation
remedies do not satisfy the Due Process Clause if the deprivation
of property is accomplished pursuant to established state
procedure rather than through random, unauthorized action.  455
U.S. at 435-36.  <u>But see</u> <u>Tillman v. Lebanon Co. Correctional
Facility</u>, 221 F.3d 410, 421 n.12 (3d. Cir. 2000)(citing <u>United
States v. James Daneil Good Real Property</u>, 510 U.S. 43, 53
(1993))(in "extraordinary situations" such as routine deduction
of fees from a prisoner's account even without authorization,
post-deprivation remedies may be adequate).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. CONST. amend. IV.  Reasonableness under the Fourth Amendment "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 618 (1988)(quoting United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985)).  "Thus, the permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." Id. at 619 (quotation marks and internal citation omitted).

In Hudson v. Palmer, 468 U.S. 517, 530 (1984), a prisoner argued that a cell search conducted to harass him was unreasonable because a prisoner has a reasonable expectation of privacy not to have his cell, locker, personal effects, person invaded for such a purpose. Id. at 529.  The Supreme Court rejected the claim because "prisoners have no legitimate expectation of privacy." Id. at 530.  The Court observed that:

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.... [S]ociety would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security.... [I]t is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.

25

Id. at 527-28 (footnotes, citations and internal quotation marks omitted).  The same conclusion was reached with respect to pretrial detainees other than convicted prisoners.  See Bell v. Wolfish, 441 U.S. 520, 558-560 (1979)(finding that a body cavity searches of pretrial detainees do not violate the Fourth Amendment).[12]

Consequently, involuntarily committed patients and SVPs, like pretrial detainees, are entitled to some protection under the Fourth Amendment, but they do not have an expectation of privacy equal to an individual in society generally.  See Serna v. Goodno, 567 F.3d 944, 948 (8th Cir. 2009)(noting that pretrial detainees are kept in custody because there is cause to believe they are dangerous; similarly, commitment under Minnesota law as a sexually dangerous person requires a finding of dangerousness), cert. denied, 130 S.Ct. 465 (2009); Allison v. Snyder, 332 F.3d 1076-79 (7th Cir. 2003)(SVPs may be subjected to conditions that advance goals such as preventing escape and assuring the safety

---

[12]   In Bell v. Wolfish, the United States Supreme Court, in determining the constitutionality of post-visitation body cavity searches, held that a reasonableness test should be employed when examining the constitutionality of a search that encroaches upon the personal privacy of an inmate and the integrity of the inmate's body.  In other words, courts must balance the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.  441 U.S. 520, 559 (1979); see also Turner v. Safley, 482 U.S. 78 (1987) (a prison regulation which infringes upon an inmate's constitutionally recognized right is valid only if it is reasonably related to a legitimate penological interest).

of others, even though they may not technically be "punished"), cert. denied, 540 U.S. 985 (2003); Aiken v. Nixon, 236 F. Supp.2d 211, 233 (N.D.N.Y. 2002), aff'd 80 Fed. Appx. 146 (2d Cir. 2003); see also, Jennings v. New York State Office of Mental Health, 786 F. Supp. 376, 382, 384 (S.D.N.Y. 1992), aff'd, 977 F.2d 731 (2d Cir. 1992).

Similarly, the United States Court of Appeals for the Ninth Circuit has held that, because SVPs have been civilly committed subsequent to criminal convictions and have been adjudged to pose a danger to the health and safety of others, they are subject to "[l]egitimate, non-punitive government interests" such as "maintaining jail security, and effective management of [the] detention facility." Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004). Thus, the reasonableness of a particular search or seizure is determined by reference to the detention context and is a fact-intensive inquiry. Id.

Here, with respect to his Fourth Amendment claim, Vanderpool's primary argument appears to be that any prison actions that did not specifically take into account his classification as a SVP is per se a constitutional violation. Applying the balancing test employed by Wolfish, this Court finds that the alleged, prospective search of personal property by dogs sniffing for contraband is plainly reasonable and does not violate Vanderpool's Fourth Amendment rights. First, such a search is not highly intrusive and does not involve a physical

touching of plaintiff's person.  Even if plaintiff were subject
to a personal search, the purpose of the search as alleged does
not violate the Fourth Amendment.  See Semler v. Ludeman, 2010 WL
145275, *19, D. Minn. Jan. 8, 2010)(finding no Fourth Amendment
violation where plaintiffs were required to submit to pat
searches following gym use and kitchen work assignments that
included removal of socks and shoes, opening their mouths,
showing their zippers, showing behind their ears and running
their fingers through their hair; search was "not highly
intrusive" and was "not unlike the scope of searches of the
general public at airport security checkpoints).  See also Serna,
567 F.3d at 955-56 (upholding reasonableness of a facility-wide
visual body cavity search after a cell phone case (cell phones
considered contraband) was found, because, while invasive, the
searches were conducted privately, safely, and professionally,
and the facility was reacting to a recurring problem involving
contraband cell phones.

    Moreover, there are no allegations that the prospective
search is to be conducted in a menacing manner.  See Kitchens v.
Mims, 2010 WL 1240980 (E.D.Cal. March 25, 2010).  Vanderpool
admits that the search is a NJDOC policy when persons arrive at a
prison facility, thus suggesting that the dog search for
contraband is to be conducted for the purpose of prison security
and the effective management of EJSP to contain and prevent
contraband from entering the facility grounds.  Accordingly, this

Court will dismiss Vanderpool's Fourth Amendment unlawful search claim at this time, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a cognizable claim under § 1983.  However, this dismissal is without prejudice to Vanderpool seeking to re-open his case with an amended Complaint alleging additional facts to support an unlawful search claim.

F.   Interruption of Treatment Claim

     Finally, Vanderpool appears to assert that therapy/treatment sessions will be completely denied because of the transfer to EJSP.  He contends that he will be denied the right to adequate treatment and reasonable care applicable to civilly committed SVPs, in violation of the Fourteenth Amendment.

     The Fourteenth Amendment to the United States Constitution, § 1, guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law."  This due process guarantee has been interpreted to have both procedural and substantive components, the latter which protects fundamental rights that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed."  Palko v. Conn., 302 U.S. 319, 325 (1937). These fundamental rights include those guaranteed by the Bill of Rights, as well as certain liberty and privacy interests implicitly protected by the Due Process Clause, such as the right to marry.  Washington v. Glucksberg, 521 U.S. 702, 720 (1997). Substantive due process also protects against government conduct

29

that is so egregious that it "shocks the conscience," even where
the conduct does not implicate any specific fundamental right.
See United States v. Salerno, 481 U.S. 739, 746 (1987).

Laws disturbing fundamental rights receive strict scrutiny
and will be upheld if they are "narrowly tailored to serve a
compelling state interest." Reno v. Flores, 507 U.S. 292, 302
(1993).  However, regulations not implicating fundamental rights
(in other words, those claims attacking particularly egregious or
arbitrary governmental actions) are analyzed under the
deferential standard referred to as the rational basis review,
and will generally succeed only if the government action shocks
the conscience.  See Glucksberg, 521 U.S. at 728.

With respect to Vanderpool's claim, it appears that he is
asserting that he has a fundamental right to adequate treatment
as a civilly committed sex offender.  The Supreme Court
established that there exists a constitutionally protected right
of mentally retarded persons confined at a state institution to
minimally adequate treatment.  Specifically, the Supreme Court
held that there is a constitutional right of mentally disabled
persons confined at a state institution to "minimally adequate
habilitation", self-care treatment or training to the extent
necessary to protect their recognized fundamental rights to
safety and freedom from physical restraints.  Youngberg, 457 U.S.
at 316, 319 and 322.

30

The Supreme Court further held that, where a fundamental right is at issue, a district court must balance "the liberty of the individual and the demands of an organized society" to determine whether such right has been violated. <u>Youngberg</u>, 457 U.S. at 320. Although restrictions burdening a fundamental right generally receive strict scrutiny, in <u>Youngberg</u>, the Supreme Court found that this sort of rigorous analysis would unduly burden the ability of states, specifically their professional employees, to administer mental health institutions. <u>Id</u>. at 322. Consequently, the Court concluded that "the Constitution only requires that the courts make certain that professional judgment was in fact exercised," because "[i]t is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." <u>Id</u>. at 321 (internal quotation and citation omitted). Thus, a decision, "if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." <u>Id</u>. at 323.

In <u>Leamer v. Fauver</u>, 288 F.3d 532 (3d Cir. 2002), the United States Court of Appeals for the Third Circuit held that New Jersey's unique former statutory scheme for sex offenders that predicated the term of sentence on a prisoner's response to treatment and created a right to treatment created a fundamental

31

and cognizable liberty interest in treatment, for purposes of both procedural and substantive due process analyses.  288 F.3d at 545.  Leamer was not a civilly committed sex offender like plaintiff here.  Rather, Leamer was a convicted sex offender whose confinement and treatment were inextricably linked pursuant to statute.  The sentencing court had classified Leamer as having a "mental aberration" and in need of "specialized treatment," which automatically subjected Leamer to the maximum incarceration permitted by law unless he is cured prior to that point.  Leamer could not reduce his sentence through good behavior credits, parole policies or other credits.  Instead, he could only shorten his incarceration through successful therapy, which was an "inherent and integral element" of the statutory scheme.  Consequently, the Third Circuit found that deprivation of treatment would be a grievous loss not emanating from the sentence.  Leamer, 288 F.3d at 544.

Apart from that recognized in Youngberg to prevent the violation of recognized fundamental rights to safety and freedom from physical restraints, this Court finds the Third Circuit's holding in Leamer to clearly extend to an involuntarily committed sex offender under New Jersey's SVPA.  Like Leamer, the length of Vanderpool's confinement under the SVPA is predicated on his response to treatment.  Indeed, the provisions of the SVPA explicitly recognize New Jersey's obligation to provide treatment to SVPs for their eventual release based on successful therapy.

See N.J.S.A. 30:4-27.32(a)("If the court finds by clear and convincing evidence that the person needs continued involuntary commitment as a sexually violent predator, it shall issue an order authorizing the involuntary commitment of the person to a facility designated for the custody, care and ***treatment*** of sexually violent predators")(emphasis added); N.J.S.A. 30:4-34(b)("The Division of Mental Health Services in the Department of Human Services shall provide or arrange for treatment for a person committed pursuant to this act.  Such treatment shall be appropriately tailored to address the specific needs of sexually violent predators."); N.J.S.A. 30:4-27.36(a)(At any time during the involuntary commitment of a person under this act, if the person's treatment team determines that the person's mental condition has so changed that the person is not likely to engage in acts of sexual violence if released, the treatment team shall recommend that the Department of Human Services authorize the person to petition the court for discharge from involuntary commitment status"); see also Kansas v. Hendricks, 521 U.S. 346, 367 (1997)(concluding from similarly-worded provisions of Kansas SVP Act that "the State has a statutory obligation to provide 'care and treatment for [persons adjudged sexually dangerous] designed to effect recovery ....")(alterations in original)(internal citations omitted).

Therefore, based on Youngberg and Leamer, this Court concludes that Vanderpool's liberty interest in treatment is

fundamental and cognizable for purposes of both procedural and substantive due process analyses.  But see Bailey v. Gardebring, 940 F.2d 1150, 1154 (8th Cir. 1991), cert. denied, 503 U.S. 952 (1992)(where the Eighth Circuit noted that Youngberg did not establish a right for the civilly committed to treatment per se; the Supreme Court only "held that the Constitution required only such 'minimally adequate training ... as may be reasonable in light of [the] liberty interest[ ] in safety and freedom from unreasonable restraints.'")(quoting Youngberg, 457 U.S. at 322). In Bailey, the Eighth Circuit concluded that plaintiff had no right to "psychiatric treatment to overcome a 'sexual offender condition'"  because he "was neither in danger during his civil commitment nor was he subject to any restraints beyond the ordinary incidents of any involuntary confinement." Id. at 1153, 1154.  Citing Bailey, district courts in the Eighth Circuit have since concluded that civilly committed sexual predators have no substantive due process right to mental health treatment, adequate or otherwise.  See Semler v. Ludeman, 2010 WL 145275, at *26 (D. Minn. Jan. 8, 2010)("Because this Court has not recognized a constitutional right to effective 'treatment' in the context of civilly committed sex offenders, Plaintiffs [alleging substantive due process violations through ineffective treatment] have failed to allege a due process claim ....")(citing Nicolaison v. Ludeman, 2008 WL 508549, at *8 (D. Minn. Feb. 11, 2008)(finding, in ultimately concluding that involuntarily

committed sex offender's right to treatment is not "clearly established" for purposes of 28 U.S.C. § 2254(d)(1), that Youngberg "only recognized a right to 'minimally adequate' treatment that reduces the need for restraints," and not a "comparable right to treatment that facilitates release")).

Nevertheless, while this Court may recognize that Vanderpool has a fundamental and cognizable liberty interest in treatment, based on the allegations and admissions by plaintiff in his Complaint, this Court also determines that there has been no procedural or substantive due process violations at this time.

With respect to Vanderpool's right to procedural due process, there does not appear to be any basis to plaintiff's claim that there has been a categorical denial of therapy due to his transfer to EJSP's administrative segregation unit.  In Leamer, the Third Circuit, relying on Sandin, found that Leamer would face "significant obstacles" in establishing a procedural due process claim based on his placement on RAP (restricted activities program) status because the mere fact of placement in administrative segregation is not in and of itself enough to implicate a liberty interest.  Leamer, 288 F.3d at 546.  In the instant case, Vanderpool is not actually confined in administrative segregation for the purpose of punishment, but rather, he and the other SVP residents at the Kearny facility were transferred to a unit at EJSP separate and apart from the convicted prisoners.  Moreover, there is no absolute denial of treatment, only a projected estimation that treatment might be

35

delayed while the transfer and living quarters are made suitable
for the residents.

This Court likewise finds no substantive due process
violation at this time.  Substantive due process prevents the
government from engaging in conduct that "shocks the conscience,"
or interferes with rights "implicit in the concept of ordered
liberty."  Glucksberg, 521 U.S. at 721.  Under this standard,
Defendants' actions in denying Vanderpool his statutory right to
treatment will be found unconstitutional under the Fourteenth
Amendment if they were so arbitrary or egregious as to shock the
conscience.  See Leamer, 288 F.3d at 546-47 (substantive due
process claim alleging inadequate treatment for committed sex
offender "must focus on the challenged abuse of power by
officials in denying [the plaintiff] the treatment regimen that
was statutorily mandated and was necessary in order for his
condition to improve, and thus for him to advance toward
release")

Here, despite Vanderpool's initial allegation, defendants
have not categorically declined to provide any mental health
treatment to the SVP residents at EJSP, but only projected a
short period for disruption of treatment so as to accomplish the
transfer and/or renovation of the segregated nit at EJSP.  Thus,
this Court cannot readily conclude that Defendants' actions were
conscience-shocking and in violation of Vanderpool's substantive
due process rights.  Indeed, plaintiff's allegation before his
actual transfer to EJSP is merely speculative and it is not

readily apparent that treatment would be disrupted for a significant time.

Thus, the Court concludes that treatment has not been denied to the SVP residents as alleged because there is no demonstrated interruption of adequate treatment that would rise to the level of a constitutional due process deprivation as alleged.  Any deviation in providing treatment appears to be speculative and merely temporary to accomplish the transfer and renovate the SVP quarters at EJSP.  Therefore, this Court concludes that the alleged short-lived disruption of therapy and treatment, if any, has not been shown to be so egregious as to render mental treatment at EJSP conscience-shockingly deficient.

Accordingly, Vanderpool's claim alleging inadequate treatment will be dismissed without prejudice for failure to state a cognizable claim of a deprivation of a constitutional right at this time.

V.   <u>CONCLUSION</u>

For the reasons set forth above, plaintiff's Complaint will be dismissed without prejudice, in its entirety as against all named defendants, for failure to state a claim at this time, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Plaintiff may seek leave to re-open this case to file an amended pleading to cure the deficiencies noted herein.  An appropriate order follows.


                              s/William J. Martini

                              _____
                              WILLIAM J. MARTINI
                              United States District Judge

38